**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

EDWARD E. WILSON,　　　　　　　:

　　　Plaintiff,　　　　　　　　　:

vs.　　　　　　　　　　　　　:　　CA 15-0446-C

CAROLYN W. COLVIN,　　　　　　:
Acting Commissioner of Social Security,
　　　　　　　　　　　　　:
　　　Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review

of a final decision of the Commissioner of Social Security denying his claim for

disability insurance benefits. The parties have consented to the exercise of jurisdiction

by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court.

(Doc. 14 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the

parties in this case consent to have a United States Magistrate Judge conduct any and all

proceedings in this case, . . . order the entry of a final judgment, and conduct all post-

judgment proceedings."); *see also* Doc. 16 (order of reference).) Upon consideration of

the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments

of counsel at the August 18, 2016 hearing before the Court, it is determined that the

Commissioner's decision denying benefits should be affirmed.[1]

---

[1]　　　Any appeal taken from this memorandum opinion and order and judgment shall
be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 14 ("An appeal from a judgment
entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for
this judicial circuit in the same manner as an appeal from any other judgment of this district
court."))

Plaintiff alleges disability due to advanced degenerative osteoarthritis of the right shoulder joint secondary to traumatic injuries and two surgical procedures, myofascial pain syndrome secondary to established mild retrolisthesis of the L5 and S1 vertebrae, probable lifelong borderline intellectual functioning, and a depressive disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

**1.     The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.**

**2.     The claimant has not engaged in substantial gainful activity since December 2, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*).**

**3.     The claimant has the following severe medical impairments: advanced degenerative osteoarthritis of the right shoulder joint secondary to traumatic injuries and two surgical procedures, a myofascial pain syndrome secondary to established mild retrolisthesis of the L5 and S1 vertebrae, probable lifelong borderline intellectual functioning, and a depressive disorder (20 CFR 404.1520(c)).**

.     .     .

**4.     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

.     .     .

**5.     After careful consideration of the entire record, the undersigned finds that the claimant still has the residual functional capacity to perform many elements of light level work as defined in 20 CFR 404.1567(b), even though he cannot perform a "full range" of such work as described in SSR 83-10. The claimant should not perform pushing or pulling with the *dominant* right upper extremity. He will need to use an immobilizer on his right shoulder and arm when in the workplace. The right hand will be a base helper hand at desktop level with no further functional use. The claimant should never climb ladders, ropes, or scaffolds; never crawl or reach overhead with the right dominant upper extremity. Due to the potential for sedation from the side effects of medications taken, the claimant should not work at unprotected heights, around vibration, around dangerous machinery, or drive automotive equipment. The claimant would have deficits in concentration, persistence, or pace that would preclude production pace work, and he should be limited to short simple tasks with occasional**

**changes in the work setting introduced gradually. Lastly, the claimant should not be required to perform tasks requiring him to read above a second or third grade level.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

The claimant alleges that he cannot work due to "right rotator cuff[], neck, arm, back, [and] slow learner". The claimant reported that he cannot lift very much, very often. He stated that he can do very little with his right arm. He alleges difficulty also bending at the waist. The claimant reports that he never socializes with friends; however, he reported attending church from time to time and shopping. He stated that he does have trouble following instructions; however, he reported that he can count change and handle bank accounts. The claimant reported in July 2012 that his "back and neck pain" are worse. He reported worsening anxiety and depression. He also stated that he planned to obtain new treatment by August 2012, but this referred to psychological treatment only. The claimant reported difficulty bathing due to his shoulder and bending "because of his back".

*After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause only some of his alleged symptoms. Moreover, the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely credible for the many reasons explained in this decision. Indeed, if accommodated within the workplace as described above, he would not experience pain or other symptoms in any significant severity, frequency, or duration.*

In terms of the claimant's physical impairment[s], his alleged limitations are not fully consistent with the medical evidence. The claimant still reported that he can care for his two dogs as of April 2012. He stated that he feeds them and lets them out of the house. He reported that he can prepare simple meals, and he stated that he can drive alone. He stated that he shops once a month for thirty minutes as well as some other quick trips. The claimant confirmed that he can go to church from time to time as well.

Moreover, the claimant has repeatedly been unable to remember the name of a third pain medication in addition to Lortab and Mobic/Meloxicam. He now testified that he takes only over-the-counter pain medications. This has been the case, even according to his testimony, since the summer of 2013. However, the most recent documentary evidence of any prescribed pain medication actually occurred earlier during February 2013. Although the claimant's worker's compensation settlement provides for treatment related to his worker's compensation injury indefinitely in Exhibit 9E, the claimant testified that he has been between treating sources for over a year now due to his drug testing that showed positive results for cocaine. Still, despite his testimony that he is aware that treatment is available at the Stanton Road Clinic, the claimant had virtually no treatment. The only report of any complaints at the Stanton Road Clinic was a concern that he may have had blood in his stool in September 2013 and again in January 2014. He had a similar complaint at the emergency room on one occasion, but there was no complaint that he had pain in his shoulder or the degree of limitation he now alleges. None of these sources indicated that he was wearing his neck brace either.

The claimant testified that the last time he was prescribed pain medication was when Wayne P. Cockrell, M.D. stopped treating him. Even the claimant testified that he has not been using medications since the summer of 2013. There is no objective evidence of use since February 2013. Still, the claimant testified that he had been on Lortab, Mobic, and Zanaflex. The claimant testified that they did help although they often put him to sleep.

The most recent actual treatment for his shoulder obtained by the claimant was in April 2013 with Dr. Cockrell. However, even during this treatment, the claimant reported having pain only rated as a 7 on a scale of zero to ten. He stated that it was normally eight and that the medications only reduced the pain to a six or seven. Still, Dr. Cockrell stated that the claimant's "significant symptom magnification focusing on the shoulder and the pain symptoms" did hinder his treatment. Still, the surgery on his shoulder was indicated to be helpful. However, the claimant avoided home exercises and had little physical therapy due to his complaints of pain. The claimant's aunt moved into his house, but, instead of allowing him to perform more exercises as Dr. Cockrell had thought, the claimant actually reverted back to performing fewer activities. The claimant's

testimony of extensively diminished activities of daily living w[as] clearly most [a]ffected by having someone to perform these activities for him [and] not his inability to do them. He did them in the past, but he has since stopped now that someone else is performing them. According to the claimant, Dr. Cockrell discontinued his treatment of the claimant based on a positive drug screen for cocaine.

Still, even prior to that time, the claimant had only infrequent treatment with Dr. Cockrell. Dr. Cockrell has consistently noted symptom magnification, but he did note limited range of motion in the right shoulder. Dr. Cockrell also noted inconsistencies that included the failure to exert as much force in grip testing than in his normal handshake and failure to follow through on several treatment modalities including physical therapy and behavioral therapy.

The claimant's x-rays of the right shoulder do show advanced degenerative changes of the right glenohumeral joint with postsurgical changes. There was cortical irregularity along the superolateral right humeral head contour, which may represent a Hill-Sachs deformity. However, there was no evidence of acute fracture or dislocation. The claimant also had nerve conduction studies on the upper extremities in October 2013. The claimant's study was normal.

Furthermore, although the claimant sought no treatment for lower back pain, he did have an x-ray of the lower back as well. [] [T]he claimant also had an x-ray of the lumbar spine in September 2013. These showed only mild retrolisthesis of L5 on L1 and small sclerotic densities overlying the bilateral SI joints, which could represent ingested material, soft tissue calcification, or bone islands.

[] Dr. Sharpe had both x-rays available to her during the examination she conducted on September 27, 2013. [] [H]er examination shows that there were no abnormalities with regard to the neck or lower back to the extent that he complied. [] [S]he observed that the claimant had no assistive device, had nearly normal range of motion in the wrists and fingers, and had "5/5" or full muscle bulk, strength, and tone on both sides. His grip strength was even rated 5/5. She stated that the claimant had no evidence of atrophy, and the claimant also had no evidence of limitations in the testing of his reflexes or sensation in both the upper and lower extremities. He was able to get up and down from the examination table with no difficulty. According to Dr. Sharpe, he even was able to take his shoes off and put them back on although there was some difficulty. She concluded that he would have no difficulty standing, walking, or sitting for eight hours each in an eight-hour day. She noted no limitation in his ability to reach, handle, finger, feel, push, or pull with the left hand although he refused to allow her to examine the right. She even concluded that he should be capable of balancing or climbing on a frequent basis. Therefore, due to his impairments, the claimant would be limited to lifting and carrying no more than twenty pounds occasionally or ten pounds

frequently. He can stand and walk for six hours total in an eight-hour day. He can sit for six hours total in an eight-hour day. Therefore, he would be restricted to work at the light exertional level. However, the claimant should not perform pushing or pulling with the right dominant upper extremity. The claimant is right-hand dominant. He will need to use an immobilizer on his right shoulder and arm when in the workplace. The right hand will be a base helper hand at desktop level with no further functional use. The claimant should never climb ladders, ropes, or scaffolds; never crawl; and never reach overhead with the right dominant upper extremity. Due to the potential for sedation from the side effects of medications taken, the claimant should not work at unprotected heights, around vibrations, around dangerous machinery, or drive automotive equipment.

In terms of the claimant's mental impairments, the alleged limitations are not consistent with the evidence. The claimant was examined in June 2012 by Kenneth Starkey, Psy.D. However, Dr. Starkey not only indicated that the claimant's global assessment of functioning (GAF) was 65, indicating mild symptoms, but Dr. Starkey stated that the claimant's pain disorder itself was only "mild." The claimant reported that he can take his mother to the store or help her pay bills. He also reported that he can go to the doctor and the grocery store. In fact, the claimant drove himself to the examination. The claimant had an euthymic mood according to Dr. Starkey and a congruent affect. However, like in other examinations, the claimant was evasive regarding both his arrest history and substance use patterns. Dr. Starkey ultimately stated that the claimant was only marginally motivated for or cooperative with the evaluation.

Dr. Starkey stated that the claimant's ability to understand, remember, and carry out simple/concrete instructions appears adequate, and his ability to work independently also appears adequate. He even stated that the claimant has adequate ability to work with supervisors, co-workers and [the] general public.

Although Dr. John W. Davis, Ph.D. stated that the claimant's results of an IQ test he administered were not valid, Dr. Starkey had already indicated his assessment of the claimant's IQ as being only borderline intelligence. Dr. Davis confirmed that the claimant's test results were not consistent with his work history, activities of daily living, or driver's license. Although he does not even diagnose the claimant with borderline intellectual functioning, Dr. Starkey's assessment is the lowest assessment of the claimant's intellectual functioning in the evidence. [] [T]he claimant confirmed that he actually completed the tenth grade in 1988. Even his school history, reporting that he had failed only one grade, even with special education, is inconsistent with intellectual functioning any lower than Dr. Starkey suggests.

Nonetheless, based on his examination of the claimant, Dr. Davis was able to conclude that the claimant would have only mild limitations in the

ability to understand, remember, and carry out instructions or make judgments on work-related decisions. He stated that there would also be only mild limitations in the ability of the claimant to interact appropriately with supervisors, coworkers, or the general public. He stated that there would be only mild limitations in the ability to respond appropriately to usual work situations or changes in a routine work setting.

Likewise, despite the combination of a diagnosed pain disorder and borderline intellectual functioning, the claimant has no evidence that he ever sought mental health treatment or vocational assistance. The claimant also performed work in the past that was at least at an unskilled level despite any intellectual impairment. Even considering the combined effects of all his physical and psychological impairments, the claimant would be capable of work involving short simple tasks.

Therefore, the claimant can only be considered to have even the degree of limitation expressed in the residual functional capacity when given extensive benefit of the doubt that the combined effects of his impairments would limit more complex work activities. To that end, the claimant would have deficits in concentration, persistence, or pace that would preclude production pace work, and he should be limited to short simple tasks with occasional changes in the work setting introduced gradually. The claimant should not be required to read above a second or third grade level.

As for the opinion evidence, great weigh is given to the opinion of F.K. Yamamoto, M.D. in Exhibit 7F. After his consideration of the evidence, he noted that the symptom magnification indicated by Dr. Cockrell and others would not change the previous assessment from June 2012 that indicates an ability to perform work at the light exertional level. Although he is a non-examining physician, his opinion is consistent with the remainder of the evidence.

Furthermore, some weight is given to the opinion of Dr. Sharpe. Her examination report provides extensive support to the limitations that she expressed. Moreover, in light of Dr. Yamamoto's statements that the claimant can perform work at the light exertional level, the failure of the claimant to allow examination of his right upper extremity becomes far less of an issue. Dr. Sharpe's opinion is consistent with the remainder of the evidence even in spite of the symptom magnification noted throughout Dr. Cockrell's treatment notes. Still, Dr. Sharpe's opinion is only given some weight because I have given great consideration and benefit of the doubt to the claimant that his right upper extremity is more limited than any source suggests. Nonetheless, the abilities in Dr. Sharpe's examination are the most consistent with the remainder of the evidence.

No significant weight can be given to the opinion of Dr. Cockrell that the claimant can perform sedentary work. This conclusion is not consistent with even his own treatment notes, which fail to show limitations in

walking or standing due to any lower extremity issues. Although this restriction would be inconsistent with the claimant's assertions of disability, I cannot provide this assessment any significant weight due to the absence of any clinical findings related to the lower extremities.

Great weight is given to the opinion of Dr. Starkey that the claimant would be limited to simple instructions. His assessment is largely consistent with the remainder of the evidence. However, no weight can be given to the statement that the claimant would have only marginal ability to handle work pressures. This limitation is not borne out in the remainder of the examination or the remainder of the evidence. The claimant has no treatment or evidence of cocaine abuse exclusive of one positive drug screen. Dr. Starkey appears to draw from the claimant's evasiveness regarding the claimant's criminal history that there was more evidence of substance abuse. The claimant explicitly denied any recent substance abuse to repeated sources. Dr. Starkey's consideration of work pressures is inconsistent with his global assessment of functioning suggesting only moderate symptoms. It is also inconsistent with the findings of Bruce Lipetz, Psy.D.

The opinion of Dr. Lipetz is also given great weight. Although he is a non-examining psychologist, his assessment is consistent with the remainder of the medical evidence. He is a mental health specialist. Likewise, his narrative explanations and full consideration of the claimant's mental health history provide his opinion added weight.

The opinion of Dr. Davis is not given significant weight. Although there is no evidence to contradict his opinion expressed on the forms he completed following his examination of the claimant, greater weight is given to the opinion of Dr. Starkey given Dr. Davis's own conclusions that the claimant was not adequately motivated to participate with his testing. Nonetheless, Dr. Davis's conclusions and the limitations expressed on the form do support the absence of any deterioration in the claimant's psychological impairments since the time that Dr. Starkey completed his examination.

Furthermore, Arthur Lorber, M.D., the medical expert providing testimony at the hearing, has considered all the medical evidence considered germane by the claimant's representative and the undersigned. His extensive training and specialization provide his opinion great weight regarding the limitations arising from orthopedically related impairments. However, the remainder of his opinion is also well informed by the evidence and he is well qualified to offer the opinions made. His opinion has been largely incorporated into the residual functional capacity assessment; however, some greater limitations that are included in the residual functional capacity have been considered, particularly in the psychological limitations upon which Dr. Lorber deferred given that he is not a psychologist or psychiatrist.

.    .    .

Lastly, it is very noteworthy that Drs. Crotwell, Sharpe, and even Cockrell have all seriously questioned the nature of the claimant's symptomatic complaints during examination and/or treatment. Moreover, clinical testing by Dr. Yeager found nothing neurologically from an objective standpoint to truly confirm the claimant's alleged complete functional use of his dominant right upper extremity (e.g. repeated physical examination findings of bilaterally symmetrical muscle tone and mass in the shoulders and upper and lower arms and normal NCV test results for the right upper extremity). When considered in the context of the claimant's documented history of substance abuse (e.g. cocaine on one or more urine drug screen tests and discharge from a pain management treatment program in April 2013 by Dr. Cockrell) and dubious effort and cooperation during clinical psychological testing attempts, serious questions regarding credibility arise about him as a witness and informant about his disability appeal.

In summary, the above residual functional capacity assessment is supported by the inconstancy of the claimant's reported symptoms during even the limited treatment that he sought, the activities of daily living inconsistent with his allegations, the absence of clinical signs or diagnostic testing to support his alleged limitations, the effectiveness of prescription medication taken in the past, the effectiveness of even the over-the-counter medications taken now, the limited compliance with either home exercises or physical therapy provided for the right shoulder, the discharge from pain management treatment, the opinion of Dr. Davis, the opinion of Dr. Starkey, the opinion of Dr. Sharpe, and the opinion of Dr. Yamamoto.

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

.    .    .

**7.     The claimant was born on August 13, 1970 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). He is still currently within the same age classification at 43 years old.**

**8.     The claimant has the practical equivalent of a marginal to low level limited education; but he is able to communicate verbally in English and read and write at a second to third grade level (20 CFR 404.1564).**

**9.     Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).**

**10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

.    .    .

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.17. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as routing clerk, DOT Code 222.587-038; a ticket taker, DOT Code 344.667-010; and a marker, DOT Code 209.587-034. She testified that there are approximately 2,900 jobs as a routing clerk; 1,100 jobs as a ticket taker; and 4,900 jobs as a marker in the state of Alabama. She testified that there are approximately 716,000 jobs as a routing clerk; 45,000 jobs as a ticket taker; and 1,087,000 jobs as a marker in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of still making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 2, 2011, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 15, 16, 18-23, 25, 26, 26-27 & 27 (internal citations omitted; emphasis in original).)

The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those unskilled light jobs identified by the vocational expert at the administrative hearing, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Wilson asserts two reasons why the Commissioner's decision to deny him benefits is in error (*i.e.*, not supported by substantial evidence): (1) the ALJ erred in acting as both judge and physician by substituting his own medical opinion for the opinion of a medical professional in violation of *Marbury v. Sullivan* and by assessing RFC without utilizing the full testimony of the impartial medical expert the ALJ practices medicine in violation of SSR 96-2p; and (2) the ALJ erred in failing to

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

provide evidence demonstrating the existence of other work in significant numbers in the national economy that plaintiff could perform given the assigned RFC.

A. ***Marbury v. Sullivan* and Whether the ALJ in this Case Practices Medicine.** Plaintiff's primary complaint is that the ALJ erred in acting as both judge and physician by substituting his own medical opinion for the opinion of a medical professional in violation of *Marbury v. Sullivan* and by assessing RFC without utilizing the full testimony of the impartial medical expert the ALJ practices medicine in violation of SSR 96-2p. The undersigned "approaches" plaintiff's two-pronged principal assignment of error through the prism of the RFC assessment in this case, as does the plaintiff (*see* Doc. 8, at 2-7).

Initially, the undersigned notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or

13

environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant still has the residual functional capacity to perform many elements of light level work as defined in 20 CFR 404.1567(b), even though he cannot perform a "full range" of such work as described in SSR 83-10. The claimant should not perform pushing or pulling with the *dominant* right upper extremity. He will need to use an immobilizer on his right shoulder and arm when in the workplace. The right hand will be a base helper hand at desktop level with no further functional use. The claimant should never climb ladders, ropes, or scaffolds; never crawl or reach overhead with the right dominant upper extremity. Due to the potential for sedation from the side effects of medications taken, the claimant should not work at unprotected heights, around vibration, around dangerous machinery, or drive automotive equipment. The claimant would have deficits in concentration, persistence, or pace that would preclude production pace work, and he should be limited to short simple tasks with occasional changes in the work setting introduced gradually. Lastly, the claimant should not be required to perform tasks requiring him to read above a second or third grade level.**" (Tr. 18 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D.Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing

upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013)[4]; *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[5] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment

---

[4]    In affirming the ALJ, the Eleventh Circuit rejected Packer's substantial evidence argument, noting, she "failed to establish that her RFC assessment was not supported by substantial evidence[]" in light of the ALJ's consideration of her credibility and the medical evidence. *Id.* at 892.

[5]    It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue,* 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart*, 264 F.Supp.2d 1007 (S.D. Ala. 2003).

As this Court understands it, plaintiff contends that the ALJ's RFC determination—for a limited range of light work—is not supported by substantial evidence because, in reaching this determination, the ALJ substituted his medical opinion for that of a treating physician—Dr. Cockrell—in violation of *Marbury v. Sullivan* and "fixated" on the diagnosis of symptom magnification, while eschewing Dr. Cockrell's examination findings, when weighing the plaintiff's credibility. (*See* Doc. 8, at 2-7.) In addition, plaintiff contends that the ALJ assessed plaintiff's RFC without utilizing the full testimony of the impartial medical expert—specifically, the testimony that plaintiff was a candidate for shoulder fusion surgery—and thereby effectively practiced medicine in violation of SSR 96-2p. (*See id.* at 2 & 7.)

In concurring in the result reached in *Marbury v. Sullivan*, 957 F.2d 837 (11th Cir. 1992), Senior Circuit Judge Johnson noted that "[a]n ALJ sitting as a hearing officer abuses his discretion when he substitutes his own **uninformed medical evaluations** for those of a claimant's treating physicians[.]" *Id.* at 840 (emphasis supplied); *see also id.* at 840-841 ("[A]s a hearing officer[, the ALJ] may not arbitrarily substitute his own hunch

or intuition for the ***diagnosis*** of a medical professional." (emphasis supplied)).[6] Plaintiff's reliance on *Marbury* in this case is unavailing for the simple fact that, as aforesaid, ALJs are specifically tasked with making RFC determinations, *compare, e.g.*, 20 C.F.R. § 404.1546(c) *with Packer, supra,* 542 Fed.Appx. at 891-892, and Wilson makes no argument that the ALJ substituted his own uninformed medical evaluation or diagnosis for the diagnosis of a treating physician. Instead, here, the ALJ simply rejected Dr. Cockrell's opinion that the claimant "can perform sedentary work." (Tr. 22; *compare id. with* Tr. 364 ("I do agree with Dr. Crotwell that Mr. Wilson should be able to do ***at least sedentary work***[.]" (emphasis supplied).) And because the ALJ articulated a very good reason for rejecting Dr. Cockrell's suggestion—that is, the fact that the treating pain doctor's own treatment notes did not "show limitations in walking or standing due to any lower extremity issues[]" (Tr. 22; *see also id.* ("Although this restriction would be inconsistent with the claimant's assertions of disability, I cannot provide this assessment any significant weight due to the absence of any clinical findings related to the lower extremities."))[7]—this Court cannot find that the ALJ ran afoul of *Marbury* in any manner related to the failure to afford Dr. Cockrell's "sedentary work" opinion significant weight. *See, e.g., Phillips v. Barnhart,* 357 F.3d 1232, 1241 (11th Cir. 2004) (recognizing that good cause for failing to accord the opinion of a treating physician substantial or considerable weight includes situations in which the opinion is

---

[6] In *Marbury,* Judge Johnson was specifically concerned with the ALJ's failure to accord any weight to the diagnoses of two treating physicians that the claimant suffered from a psychogenically caused seizure disorder. *Id.* at 840.

[7] Indeed, in July of 2012, Dr. Cockrell specifically declined Wilson's request to complete a form for him to obtain a handicap sticker for his car. (*See* Tr. 392 ("Of note, Mr. Wilson today request[s] a handicap sticker stating that he has difficulty even ambulating secondary to shoulder pain. This does not seem particularly reasonable to me and that has not been filled out.").)

conclusory and inconsistent with the doctor's own medical records). Moreover, with respect to plaintiff's pain allegations, the ALJ not once suggested that plaintiff suffers from no pain (Tr. 19-25); instead, the ALJ found, and the record supports, that Wilson experiences no severe disabling pain and would suffer little pain in the workplace upon proper accommodation (*compare id. with* Tr. 18, 57 & 59). In this regard, the ALJ did not simply rely upon Dr. Cockrell's ubiquitous references to plaintiff's symptom magnification and concomitant failure to improve function through physical therapy/home exercises (*compare* Tr. 20 & 25 *with* Tr. 362-365, 367-368, 391-396 & 399-400) but, as well, his activities of daily living—including, feeding and otherwise caring for his two dogs, preparing simple meals, driving alone, and attending church (*compare* Tr. 19 & 25 *with* Tr. 307-309), his infrequent treatment by Dr. Cockrell—only every three months (*compare* Tr. 20 *with* Tr. 362, 364, 367, 391, 393, 395 & 399)—and ultimate discontinuation of treatment by this physician due to a positive cocaine screen (*compare* Tr. 19 & 20 *with* Tr. 60-62, 70 & 400), his ability to handle his pain with over-the-counter medication following the discontinuation of treatment by Dr. Cockrell (*compare* Tr. 25 *with* Tr. 70 & 397-398), objective evidence inconsistent with disabling pain (*compare* Tr. 25 *with* Tr. 427 (normal nerve conduction study)), and the opinions of Drs. F.K. Yamamoto and Thomasina Sharpe (*compare* Tr. 25 *with* Tr. 388 & 415-424). The foregoing evidence establishes that Wilson does not experience severe disabling pain and, when combined with the hearing testimony of medical expert Dr. Arthur Lorber, an orthopaedic surgeon (*see* Tr. 436), constitutes substantial support for the ALJ's "physical" RFC determination.[8]  Indeed, it  was Dr. Lorber's opinion, upon a review of

---

[8]    Nothing about this assignment of error can be regarded as an attack on the ALJ's "mental" RFC determination. (*See* Doc. 8, at 2-7.)

the medical records and having listened to Wilson's testimony (Tr. 51-52), that plaintiff's impairments did not meet or medically equal an "orthopedic" listing (Tr. 56) and that he retains the residual functional capacity to frequently lift 10 pounds and occasionally lift 20 pounds with the non-dominant left upper extremity,[9] with no restrictions on sitting, standing, or walking, but an inability—because of his essential one-handedness—to climb ladders, scaffolds, and ropes or work at unprotected heights, and he should avoid exposure to concentrated vibration (Tr. 57). In addition to the foregoing testimony, Dr. Lorber testified that he would not expect an individual like plaintiff to suffer significant pain "[a]s long as the shoulder is immobilized and not moving[.]" (*Id.* at 59; *see also id.* at 60 ("[B]y in large in my experience, individuals with severe lineal humeral joint pathology, once the[] shoulder is immobilized, the level of pain goes down considerably to a point which is tolerable.").) Because the ALJ appropriately "linked" his physical RFC determination (*see* Tr. 18 ("**After careful consideration of the entire record, the undersigned finds that the claimant still has the residual functional capacity to perform many elements of light level work as defined in 20 CFR 404.1567(b), even though he cannot perform a "full range" of such work as described in SSR 83-10. The claimant should not perform pushing or pulling with the *dominant* right upper extremity. He will need to use an immobilizer on his right shoulder and arm when in the workplace. The right hand will be a base helper hand at desktop level with no further functional use. The claimant should never climb ladders, ropes, or scaffolds; never crawl or reach overhead with the right dominant upper extremity. Due to the potential for sedation from the side effects of**

---

[9]     "He does not require any manipulative restrictions regarding the use of his left upper extremity." (Tr. 57.)

**medications taken, the claimant should not work at unprotected heights, around vibration, around dangerous machinery, or drive automotive equipment.**")) to all of the foregoing evidence of record (*see* Tr. 19-25), this Court does not hesitate either in finding that the ALJ's RFC determination is supported by substantial evidence or in rejecting the first prong—that is, the *Marbury*/credibility prong—of plaintiff's first assignment of error.

The second part of plaintiff's argument is that the ALJ assessed plaintiff's RFC without utilizing the full testimony of the impartial medical expert—specifically, the testimony that plaintiff was a candidate for shoulder fusion surgery—and thereby effectively practiced medicine in violation of SSR 96-2p. (Doc. 8, at 2 & 7.) This Court simply cannot agree with plaintiff's argument in this regard inasmuch as Dr. Lorber's testimony regarding plaintiff's candidacy for shoulder fusion surgery (Tr. 58)[10] would have no additional impact on the RFC determination of the ALJ inasmuch as that determination "recognizes" plaintiff's wholesale inability to utilize his right upper extremity other than using the right hand as "a base helper hand[.]" (*Compare* Tr. 58 ("Such a procedure [shoulder fusion] would eliminate pain emanating from his shoulder joint because there could be no motion once the fusion is successful.") and Tr. 59 ("As long as the shoulder is immobilized and not moving, I would not anticipate significant pain.") *with* Tr. 18 ("**The claimant should not perform pushing or pulling with the *dominant* right upper extremity. He will need to use an immobilizer on his right shoulder and arm when in the workplace. The right hand will be a base helper**

---

[10]     Dr. Lorber specifically testified that he could not determine from the available evidence whether plaintiff is a candidate for shoulder replacement surgery. (Tr. 58.) Accordingly, the ALJ was not under any obligation to give any consideration to speculative testimony that has no import with respect to the decision reached.

**hand at desktop level with no further functional use. The claimant should never climb ladders, ropes, or scaffolds; never crawl or reach overhead with the right dominant upper extremity.**").) Stated somewhat differently, it certainly appears to this Court that the ALJ specifically considered plaintiff's candidacy for shoulder fusion surgery by totally limiting plaintiff's functional use of his dominate right upper extremity save for use of the right hand as a base helper hand. Accordingly, the undersigned finds that the second part of plaintiff's first assignment of error also fails.

In sum, this Court finds that the ALJ's RFC assessment provides an articulated linkage to the medical (and other) evidence of record and is, therefore, supported by substantial evidence. Plaintiff's two-headed first claim lacks merit for the reasons previously explained in no small detail.

    **B.**    **Does the Vocational Expert's Testimony Conflict with the the Dictionary of Occupational Titles**? Plaintiff contends that the ALJ erred in failing to provide evidence demonstrating the existence of other work in significant numbers in the national economy that he can perform given the assigned residual functional capacity. (Doc. 8, at 7; *see also id.* at 8-10.) More specifically, Wilson argues that given the ALJ's specific RFC finding that he is limited to "short, simple tasks with occasional changes in the work setting introduced gradually[]" (Tr. 18), the VE's testimony that he can perform work as a routing clerk, ticket taker, and marker conflicts with the Dictionary of Occupational Titles ("DOT") since all of these jobs require a reasoning level of "2," that is, an ability to understand and carry out "detailed but uninvolved written or oral instructions." (Doc. 8, at 10.)

The undersigned finds no inherent conflict between the VE's testimony and the DOT provisions cited by plaintiff. *See Hurtado v. Commissioner of Social Sec.,* 425 Fed.Appx. 793, 795-796 (11th Cir. Apr. 25, 2011). Instead, this Court specifically holds

that reasoning levels one, two and three, as defined in the DOT, are all "'consistent with a limitation to simple, unskilled work[,]'" *Johnson v. Astrue,* 2012 WL 5472418, *13 (E.D. La. Oct. 5, 2012) (quoting *Thacker v. Astrue,* 2011 WL 7154218, *4 (W.D. N.C. Nov. 28, 2011), *report and recommendation adopted,* 2012 WL 380052 (W.D. N.C. Feb. 6, 2012)), *report and recommendation approved,* 2012 WL 5472303 (E.D. La. Nov. 9, 2012); *see also id.* ("Reasoning Levels 1, 2 and 3 as defined in the Dictionary of Occupational Titles each 'entail commonsense understanding of instructions and dealing with problems involving, at most, several variables in or from standardized situations.'" (citation omitted)), and, therefore, finds no direct conflict between the DOT's definitions of the jobs of routing clerk, ticket taker, and marker, each of which require a maximum reasoning level of two, and the VE's testimony that a claimant with a limitation to "short, simple tasks with occasional changes in the work setting introduced gradually[]" is capable of performing these jobs (*see* Tr. 80-85). Accordingly, the plaintiff's argument in this regard necessarily fails.

In light of the foregoing and because substantial evidence of record supports the Commissioner's determination that Wilson can perform the physical and mental requirements of a reduced range of light work as identified by the ALJ (*see* Tr. 18; *compare id. with* Tr. 57-59, 60-62, 70, 307-309, 362-365, 367-368, 388, 391-396, 399-400 & 415-424), and plaintiff makes no meritorious argument that this residual functional capacity would preclude his performance of the jobs identified by the VE during the administrative hearing (*compare* Doc. 8 *with* Tr. 82-83), the Commissioner's fifth-step determination is due to be affirmed. *See, e.g., Owens v. Commissioner of Social Security,* 508 Fed.Appx. 881, 883 (11th Cir. Jan. 28, 2013) ("The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given h[er] RFC, age, education, and work experience. The Commissioner bears the

burden at step five to show the existence of such jobs . . . [and one] avenue[] by which the ALJ may determine [that] a claimant has the ability to adjust to other work in the national economy . . . [is] by the use of a VE[.]"(internal citations omitted)); *Land v. Commissioner of Social Security,* 494 Fed.Appx. 47, 50 (11th Cir. Oct. 26, 2012) ("At step five . . . 'the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.' The ALJ may rely solely on the testimony of a VE to meet this burden." (internal citations omitted)).

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 13th day of September, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**